On the Merits.
 

 ODOM, J.
 

 The principal allegations under which plaintiffs ask relief and the proceedings had in this case are stated in our opinion on the motion to dismiss, and we shall not restate them in detail.
 

 The rule is well established that in passing on an exception of no cause of action the court must accept as true the allegations of fact set out in the petition. This rule does not apply, however, to those allegations which are mere conclusions of the pleader.
 

 Plaintiffs’ chief complaint is that their lands have not been and will not be benefited by the levy, assessment, and collection of these taxes, and that the board of commissioners does not contemplate the building of additional levees or the taking of further steps to protect their lands from overflow.
 

 These being allegations of fact we accept them as true. But it does not follow that because of these facts and conditions these plaintiffs are entitled to the relief they seek, in view of certain other allegations which we shall state later in this opinion.
 

 This levee and drainage district was created under Act 109 of 1904. Section 2 of that act provides that the control and management of the said district “shall be, and is hereby vested in a Board of Commissioners.” By section 4 it is provided that said board of-commissioners “shall be, and is hereby declared to be, and is created a corporation and body politic, and invested with all the powers, privileges and immunities conferred by law upon other corporations of like character within this State.”
 

 Section 6 of the act provides that for the purpose of raising revenues to carry ■ out the projects contemplated by the act, said board
 
 *458
 
 o£ commissioners may levy annually an ad valorem tax of ten mills on- the dollar of the assessed valuation of the land in the district, said taxes to be extended on the tax rolls by the assessor “and the Tax Collector * * * shall collect the said District Tax in the same manner as State Taxes are collected.”
 

 Under sections 7 and 8 of the act, the board is authorized to levy local assessments or forced contributions and acreage taxes, and under section 10 “to issue bonds to the amount of Three Hundred Thousand Dollars,” said bonds to be “secured by taxes, assessments and forced contributions, * * * all of the said bonds to become due in fifty years, * * * the said interest to be evidenced by coupons attached to the said bonds, payable annually * * * out of the revenues hereinbefore provided.”
 

 Section 11 of the act provides that the board of commissioners may negotiate said bonds and “that the interest on the said bonds shall be paid out of the funds arising from the collection of the revenues hereinbefore provided,” and section 12, that after twenty-five years from the execution of the said bonds, the state treasurer shall each year “set aside out of the revenues of the District a sum in excess of the interest on said bonds to * * * constitute a sinking fund for the payment of the principal of said bonds when due.”
 

 Section 13 provides:
 

 “That the issue of said bonds is hereby declared to create a valid contract between the said Board of Commissioners, the State and each and every holder of said bonds, which neither the said Board of Commissioners nor the State shall impair.”
 

 These petitioners allege that since this levee district was created and the board of •commissioners organized under said act, the board has issued bonds-in the sum of $300,000, which have been sold and the proceeds already expended in the building of levees. It is conceded that these bonds are now outstanding in the hands of persons unknown. Under the precise letter of the law, these' bonds are valid contracts between the board of commissioners and the state on the one hand, and the holders of them on the other. For their payment, together with all interest due thereon, the said board of commissioners and the state have pledged their faith and credit.
 

 The only means provided for the payment of these bonds and the interest is by the levy, assessment, and collection of taxes. The board of commissioners has provided this means by levying the taxes and the tax collector is attempting to collect them. These plaintiffs are now before, the court attacking the levy of these taxes and are seeking to restrain the tax collector from collecting them on the ground, mainly, that the general scheme adopted by the board of commissioners of said levee district for the protection of their lands from overflow has resulted in failure and that there is no room for hope that any relief will be afforded in the future.
 

 The court cannot entertain their demands-. Whether the board of commissioners acted wisely or unwisely in issuing and negotiating the bonds, whether it erred in judgment in the expenditure of the proceeds thereof, or whether the lands intended to be protected, have been or ever will be benefited or not, are matters and issues which cannot now be raised and gone into by these plaintiffs as owners of property in the district. .These matters and issues are foreclosed. The bonds have been issued and sold and must be paid. They cannot be paid if'the machinery which the Legislature created for -the raising of funds for that purpose is disrupted. The faith and
 
 *460
 
 credit of the levee district and of the state are behind--these bonds. The board of commissioners must- see that taxes to pay them are levied, the assessor- must extend the taxes on the rolls of the parish, and the tax collector must collect them. These duties must be performed by these officials. The act specifically provides in section 13 that:
 

 “The taxes and assessments required for the payment of the interest and sinking fund of said bonds shall, to the extent .required to provide for the payment thereof, as above set forth, be assessed and collected each year until the interest and principal of said bonds shall have.been paid in full.”
 

 If the board of commissioners, the assessor, and the tax collector should fail to levy, assess, and collect these taxes, they could be compelled to do so, for the act provides in section Í3:
 

 “And, the judicial power shall be exercised by any Court of competent jurisdiction within the State of Louisiana, when necessary to secure such levy, collection and payment.”
 

 The act goes further and provides in section 13 that:
 

 “No court shall enjoin the payment of the principal or interest thereof, or1 the levy and the collection of the tax therefor.”
 

 These plaintiffs are therefore now seeking to prohibit these officials from doing what they are commanded to do under the express provisions of the law, and which they may be compelled to do by the exercise of the judicial power, and are asking the court to do the very thing.which the law specifically prohibits it from doing.
 

 As the situation is presented by plaintiffs in their petition, they and their property are now within the very teeth of the law and there is no escape for them.
 

 It is alleged, and counsel say in oral argument and in brief, that under the general plan contemplated by the federal government for the control of the flood waters in the Mississippi Valley, their lands'will be within the Atehafalaya Spillway and will be inundated when the Red and Mississippi rivers overflow, and that their value will thereby be utterly destroyed. The allegation that their lands will be destroyed is a mere conclusion of the pleaders. But conceding that such may ultimately be the case, yet according to their allegations, the lands have not yet been taken over by the government for that purpose, nor is it certain that they ever will be. With these bonds outstanding and unpaid, unless and until plaintiffs’ lands are taken over by supreme governmental power and authority, and so long as they exist and are subject to private ownership, they are subject to taxation and their owners must pay the taxes levied and assessed by legal authority.
 

 It is alleged that the board of commissioners of said drainage district has ceased to function. That may be true so far as constructive work is concerned. But the board cannot legally become functus officio as long as these bonds are outstanding and unpaid.
 

 Section 14, Act 109 of 1904, creating said board, reads in part as follows:
 

 “Sec. 14. Be it further enacted, etc., That the corporate existence of said Red River and Bayou Des Glaises Levee and Drainage District, and the Board of Commissioners thereof, as provided for in this Act, shall continue [not may continue] until all the bonds issued in accordance with the provisions of this act shall have been paid and extinguished.”
 

 But it was contended-that the so-called Flood Control Act adopted by Congress in May, .1928 (33 USCA §§ 702a to 702m, 704).
 
 *462
 
 superseded and set aside all. state laws enacted for the purpose of levying and draining lands situated in the Mississippi Valley from the Head of Passes to. Cape Girardeau, Mo.; in other words, that the board of commissioners of this and all other levee distriets have been put out of existence.
 

 If it be true, as counsel argue, that the federal government has authority to set aside such state laws, it is not true as a matter of fact that Congress intended to or did attempt to set aside and render functus officio these levee boards. To the contrary, the Flood Control Act specifically recognized these boards and enjoined upon them certain duties and exacted of them certain obligations in connection with the general flood control scheme.
 

 We quote extracts from the Flood Control Act, as follows: “It is hereby declared' to be the sense of Congress that the principle of local contribution toward the cost of flood-control work, which has been incorporated in all previous national legislation on the subject, is sound, as recognizing the special interest of the local population in its own protection.” (Section 2, 33 USCA § 702b.)
 

 “Except when authorized by the Secretary of War, upon the recommendation of the Chief of Engineers, no money appropriated under authority of sections 702a to 702m of this title shall be expended on the construction of any item of the project until the States or levee districts have given assurances satisfactory to the Secretary of War that they will (a) maintain all flood-control works after their completion, except controlling and regulating spillway structures, including special relief levees; maintenance includes normally such matters as cutting grass, removal of weeds, local drainage, and minor repairs of main river levees; (b) agree to accept land turned over to them under the provisions of section 702d; (c) provide without cost to the United States, all rights of way for levee foundations and levees on the main stem of the Mississippi River between Cape Girardeau, Missouri, and the Head of Passes.” (Section 3, 33 USCA § 702c.)
 

 In Major General Edgar Jadwin’s report to the President, dated December’ 8, 1927, he said with particular reference to Atchafalaya Basin:
 

 “Sec. 105. The levee lines are laid out so as to avoid drainage problems as much as possible. Where drainage is interrupted, gaps will be left until local authorities can arrange for the proper drainage. Sec. 106. Most of the levee lines confining the northern portion of the floodway can be constructed now. The levees confining the southern portion should be constructed as fast as justified economically and as the requisite drainage projects are developed by local authorities.”
 

 As to whether the general plan of federal government will destroy or ever render less valuable the property in the Atchafalaya Basin, where plaintiffs’ lands are situated, General Jadwin said:
 

 “See. 109. The proposed plan gives the river room to expand when in extraordinary flood, but does not take away from the existing land owners any of the protection which they now have. History indicates that overflows over the relief levees will not recur on an average more often than once in fifteen years. Some spaces must be available for the Mississippi to spread into, and this territory is most suitable hydraulically and the most undeveloped economically. It is largely swamp land now. The floodways are necessary to make other parts of the Mississippi Valley safe, and no existing protection is to be reduced.”
 

 
 *464
 
 Under Act 195 of 1928, the board of commissioners increased the acreage tax from 7 to 20 cents an acre. This increase is attacked upon the ground that said act was adopted subsequent to the passage of the Flood Control Act and is superseded by it.
 

 There is no merit in this contention, as we have already shown.
 

 The contention that the acreage tax is unconstitutional because the consent of the property owners was not secured before its levy is also without merit. The assessment of an acreage tax or forced contribution by •levee boards is not within the scope of the limitations in the Constitution on general taxation.
 

 See John Hill et al. v. Fontenot, Sheriff, etc., 46 La. Ann. 1563, 16 So. 475, and the many authorities there cited.
 

 For the reasons assigned the judgment appealed from is affirmed, with all costs.